**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHNNY L. WOODFAULK,

            Plaintiff,

vs.                                                        Case No.  3:07-cv-452-J-32JRK

REV. WILLIAM H. LAMAR, IV, et al.,

            Defendants.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Defendants McKinley Young, William H. Lamar, IV, Ronald Williams, and Mary N. Ravnell's Motion to Dismiss (Doc. 6; Individual Defendants' Motion to Dismiss) filed July 19, 2007 and Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (Doc. 7; MERS' Motion to Dismiss) filed July 20, 2007. Plaintiff filed a responsive document[2] (Doc. 9; First Response) on August 1, 2007. Due to uncertainty about whether Plaintiff's filing was intended to serve as a response to both Motions, the Court permitted Plaintiff to supplement his existing response. Plaintiff thereafter submitted his "Motion for Supplement"

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal.

[2] Plaintiff's filing was entitled "Objections to defendants [sic] motion for a more definite statement" (Doc. 9).

(Doc. 11; Second Response) on October 1, 2007, which the Court construes as a supplemental response to Defendants' Motions.[3]

**I.     Background**

**A.     Plaintiff's Complaint**

On May 24, 2007, Plaintiff, proceeding pro se, filed a civil action against William H. Lamar, IV, the Rev. George Hartsfield, "as registered agent for New Bethel AME Church," Ronald Williams, Mary N. Ravnell, and two entities identified as "Board of Directors" and "Secretary Defendants,"[4] alleging a variety of claims relating to Plaintiff's interest in his mother's estate.[5]  Plaintiff claims that 1) Defendants, as church officials of New Bethel AME Church, "are attempting to take the property[6] away from her son for profit" (Compl. ¶ 2); 2) Defendants have taken part in unspecified conspiracies against Plaintiff (id. ¶¶ 1, 5); 3) Defendants have interfered with Plaintiff's inheritance of his mother's estate (id. ¶¶ 3-4); 4) the (unnamed) personal representative of his mother's estate has committed errors and omissions with regard to the estate under Florida probate law (id. ¶ 4); 5) Defendants have "violated the articles of incorporation for a church" (id. ¶ 1); and 6) an unnamed person or persons, presumably one or more of the Defendants, have "alter[ed] and falsely present[ed] records and post[ed] the signature of [Plaintiff] from one documentation to another" (id. ¶ 5).

---

[3] See Order of Referral (Doc. 12) at 1 n.1.

[4] The parties "Board of Directors" and "Secretary Defendants" were later terminated when Plaintiff filed his Amended Complaint.

[5] It appears from the record that Plaintiff's mother died intestate in 2003.

[6] Although the nature of the "the property" is unspecified in the Complaint, Plaintiff's Amended Complaint clarifies that the property concerned is Plaintiff's mother's home, located at 1955 Ella Street in Jacksonville, Florida.  (Am. Compl. 3, ¶ 6.)

Additionally, Plaintiff makes a number of references to various constitutional provisions and other laws which he believes have been violated, including the Due Process Clause of the Fifth Amendment, the cruel and unusual punishment clause of the Eighth Amendment, the "Ex Post Facto" clause, criminal conspiracy statutes, and the homestead exemption provisions of Article Ten of the Florida Constitution.  Plaintiff demands both compensatory and punitive damages.[7]  (Id. ¶ 5.)

### B.    Plaintiff's Amended Complaint

On May 30, 2007, Plaintiff filed his "Amended Motion for Clarification" (Doc. 3; Amended Complaint), which the Clerk docketed as an amended complaint.  Plaintiff's Amended Complaint adds a number of Defendants, including Mortgage Electronic Registration Systems, Inc. (MERS), Federal Home Loan Mortgage Corporation, Northwest [sic] Financial of Florida, Inc., First Union Mortgage Corporation, and several other individuals.[8]  Reiterating his earlier claims and attaching a number of exhibits, Plaintiff alleges that the mortgage that existed on his mother's property was obtained through "[p]redatory [l]ending and [a]ffinity [f]raud"[9] (Am. Compl. 1, ¶ 3), and that the efforts of

---

[7] Plaintiff's "Motion for Supplement" (Doc. 11) seeks leave to add a claim for punitive damages, notwithstanding the earlier claim for punitive damages.  Plaintiff's request is addressed below.  See infra Part III.E.

[8] There is no indication in the record that any Defendants other than those filing Motions to Dismiss have been served or otherwise given notice of Plaintiff's suit.

[9] In support of this claim, Plaintiff incorporates into his Amended Complaint what appears to be an excerpt from unidentified source material, describing "predatory lending" as the practice of taking advantage of "the ignorance or advanced age of borrowers . . . [by] saddling borrowers with more debt than they can handle, tricking a borrower into a loan with high rates and junk fees, and overcharging or charging twice for required services."  (Am. Compl. 2.)  The source describes "affinity fraud" as "scams [that] prey on members of identifiable groups – such as church or ethnic communities, the elderly or professional groups . . . [by] exploiting the trust and friendship of people who have something in
(continued...)

Defendant MERS to foreclose on the property in 2003 were illegal under Florida law (id. at 3, ¶¶ 5, 9). Plaintiff also claims that a loan and credit insurance policy issued to Plaintiff's mother in 1999 by Defendant Norwest Financial Florida constituted predatory lending and affinity fraud and violated fraudulent conveyance laws. (Id. at 2, ¶¶ 1-3). Plaintiff further asserts a homestead interest in his mother's property under the Florida Constitution, claiming that the property cannot be sold to satisfy debts of the owner. (Id. at 3, ¶ 7.) Finally, Plaintiff claims that his mother's trust was violated by the Church. (Id. at 3, ¶ 10.) Plaintiff seeks monetary damages for fraud, pain and suffering, and "mental torment," (id. at 4, ¶ 3), punitive damages (id. at 1 ¶ 1, 4 ¶ 4), and equitable relief in the form of correcting "all errors that have been committed in the transactions of the Estate of Beatrice W. Ziegler" and granting him "full custody" of his mother's estate (id. at 3, ¶¶ 11-12).

### C. Defendants' Motions to Dismiss

Defendants Lamar, Young, Williams, and Ravnell (the "Individual Defendants") move to dismiss based on lack of service of process under Rule 4 of the Federal Rules of Civil Procedure (Rule(s)). The Individual Defendants received notice of the suit when a copy of the complaint was dropped off at the offices of Defendants Young and Lamar. (Individual Defs.' Mot. to Dismiss 3.) Alternatively, the Individual Defendants move to dismiss the action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted or for lack of subject matter jurisdiction. (Id.)

---

[9](...continued)
common." (Id.)

Defendant MERS moves to dismiss on the following bases: 1) Plaintiff lacks standing to bring claims concerning MERS' alleged wrongdoing against Plaintiff's mother (MERS' Mot. to Dismiss 3); 2) Plaintiff is barred by res judicata from bringing claims against MERS relating to the state court foreclosure action concerning Plaintiff's mother's property (id.); 3) Plaintiff cannot claim homestead protection under Florida law because the homestead exemption does not protect mortgaged property from foreclosure (id. at 4); 4) Plaintiff's fraud claim against MERS has not been stated with particularity as required by Rule 9(b), and, moreover, is barred by the statute of limitations (id. at 4-5); 5) Plaintiff's Constitutional claims fail against MERS because MERS is not a state actor (id. at 5); and 6) Plaintiff's conspiracy claim fails because Plaintiff has not pleaded an underlying tort or wrong, nor has he alleged MERS entered into any agreement with any other party (id. at 5-7).  In the alternative, MERS seeks a more definite statement under Rule 12(e) because it is unable to discern from Plaintiff's claims what wrongdoing Plaintiff ascribes to it.  (Id. at 7.)

In Plaintiff's response of August 1, 2007, primarily addressed to MERS' Motion to Dismiss, Plaintiff argues that as the sole heir to his mother's estate, he has standing to assert the claims made in his Complaint. (First Resp. 1, ¶¶ 1-3.)  Plaintiff rejects MERS' res judicata argument, averring "[t]here has been no earlier decision on this issue," nor any "final judgment on the merits."  (Id. at 2, ¶¶ 1-2.)  Plaintiff argues that he has stated a federal cause of action and provides several citations of federal caselaw.[10]  (Id. at 2, ¶ 3.)  Plaintiff also requests that MERS be asked to "show cause as to why they are authorized to transact

---

[10] Although Plaintiff's citations do not support his allegations, the Court commends Plaintiff's efforts to research his claims.

business in the state of Florida." (Id. at 3.)  Plaintiff's second response of October 1, 2007, requests leave to amend his Complaint to add a claim for punitive damages, and states that these damages are sought due to Defendants' "reckless disregard for human life, and rights and a gross and flagrant careless disregard for public safety."  (Second Resp. 1.)

## II.     Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must set forth the "grounds of his entitlement to relief" using more than mere "labels and conclusions."  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).  A plaintiff's factual allegations, even though taken as true and in the light most favorable to plaintiff, see Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003), must be sufficient "to raise a right to relief above the speculative level."  Id.  Pleadings submitted by a pro se plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  Nevertheless, a court is under no duty to "re-write" plaintiff's complaint to find a claim.  See Peterson v. Atlanta Housing Authority, 998 F.2d 904, 912 (11th Cir. 1993).  Federal district courts are courts of limited jurisdiction and must dismiss an action sua sponte if it is found at any time to be lacking subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3).

## III.    Discussion

Because Plaintiff's allegations cover a broad range of state and federal law and a number of distinct transactions and circumstances, the Court divides them into five categories

for purposes of review[11]: 1) the Constitutional claims; 2) the claims concerning the alleged conveyance to a church; 3) the claims regarding improper administration of Plaintiff's mother's estate; 4) the claims concerning the mortgage on Plaintiff's mother's property; and 4) miscellaneous additional claims.

### A.     Constitutional Claims

Plaintiff cites violations of the Due Process Clause of the Fifth Amendment to the Constitution, the cruel and unusual punishment clause of the Eighth Amendment to the Constitution, and the Ex Post Facto clause of Article I, Section 10 of the Constitution.  The Court has subject matter jurisdiction to consider Constitutional violations.  See 28 U.S.C. § 1331.  Plaintiff, however, has not stated with specificity how any of the cited Constitutional provisions have been violated in his particular case, or even how they are logically linked to the facts of his case.  Nevertheless, reading Plaintiff's complaint liberally, see Tannenbaum, 148 F.3d at 1263, the Court analyzes each reference to determine if Plaintiff has stated a cognizable claim.

The Due Process Clause of the Fifth Amendment provides, "No person shall . . . be deprived of life, liberty, or property, without due process of law." See U.S. Const. amend. V.  This protection applies only against actions of the federal government.  See Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997).  The Fourteenth Amendment expands these protections by applying them to state actors.  See U.S. Const. amend. XIV (providing that "[n]o *State* shall . . . deprive any person of life, liberty, or property, without due process of law"

---

[11] Because Plaintiff's claims do not always identify which Defendant(s) are associated with each of the various allegations, they are not readily susceptible to organization on that basis. Accordingly, the Court's discussion will necessarily include some claims that may not apply to Defendants with pending Motions to Dismiss.

(emphasis added)) . Plaintiff, however, has not alleged the involvement of any government actors, either federal or state. Plaintiff's reference to the Due Process Clause consists of the following statement: "The 5th Amendments [sic] Due Process Clause punitive damages 'as in' playing upon words such as changing the placement of them." (Am. Compl. 1, ¶ 1.) As Plaintiff does not elaborate how "playing upon" or "changing the placement" of words constitutes a deprivation of life, liberty, or property, nor identify which words are at issue or in which context they have been used, this claim does not meet the pleading standards of Rule 8(a).

Interpreting Plaintiff's complaint expansively, the Court speculates that Plaintiff may be referring to the allegedly improper handling of Plaintiff's mother's estate as a deprivation of property. See infra Part III.C. Alternatively, Plaintiff may be referring to Defendant MERS' foreclosure action as a deprivation of property. See infra Part III.D. Even through the lens of these interpretations, however, Plaintiff has not alleged wrongdoing on the part of state or federal government actors; therefore, he has not stated a claim under the Due Process Clause.[12]

Moreover, Plaintiff has not stated a valid claim for cruel and unusual punishment under the Eighth Amendment. See U.S. Const. amend. VIII. The Eighth Amendment is designed to protect persons convicted of crimes; it is inapplicable when no conviction has taken place. See Ingraham v. Wright, 430 U.S. 651, 664 (1977) (holding Eighth Amendment inapplicable in school discipline case); see also Marsh v. Butler County, 268 F.3d 1014, 1024 n.5 (11th Cir.

---

[12] To any extent that this claim would theoretically involve the state court as a government actor, such a claim would be barred under the Rooker-Feldman doctrine. See infra Part III.D.

2001) (finding Eighth Amendment inapplicable to pretrial detainee). Plaintiff has not alleged any facts showing that he has been convicted of any crime or sentenced as a result thereof. Plaintiff's averment that Defendant's actions have "punished" him in a financial, emotional, or other capacity does not afford Plaintiff the right to protection under the Eighth Amendment. Consequently, Plaintiff has not stated a cognizable claim based on cruel and unusual punishment.

Plaintiff also has not stated a colorable claim under the Ex Post Facto clause of the Constitution. See U.S. Const. art. I, § 10, cl. 1. The Ex Post Facto clause "prohibits the states from making laws 'which, by retroactive operation, increase the punishment for a crime after its commission.'" Penoyer v. Briggs, 206 Fed. Appx. 962, 965 (11th Cir. 2006) (quoting Garner v. Jones, 529 U.S. 244, 249 (2000)). Plaintiff's reference to this clause appears related to his claim that an updated version of the Florida homestead exemption law does not apply to his mother's estate because it was not effective at the time of his mother's death. (Compl. 1, ¶ 3.) Plaintiff's claim bears no relation to penal statutes, much less a criminal case involving Plaintiff; therefore, it fails to state a valid claim under the Ex Post Facto clause.

### B. Claims Regarding Conveyance to Church

Plaintiff makes several claims concerning a conveyance and/or attempted conveyance of his late mother's home to New Bethel AME Church ("the Church"), including claims of conspiracy, fraud and other unlawful acts against the Individual Defendants who allegedly were involved in or benefitted from the conveyance. Plaintiff must show how these claims come under the jurisdiction of the Court, which, like other federal lower courts, is a court of limited jurisdiction. Plaintiff may seek the jurisdiction of this Court by raising a question of

federal law, as with the Constitutional claims reviewed above. See 28 U.S.C. § 1331. Upon review of Plaintiff's allegations that the Individual Defendants committed fraud in obtaining the property, conspired to obtain the property, and violated the articles of incorporation for a nonprofit organization, the Court sees no federal law at issue, as these matters are all governed by Florida law. See generally Fla. Stat. ch. 689 et seq. (conveyances); Fla. Stat. ch. 726 (fraudulent transfers); Fla. Stat. ch. 777.04 (conspiracy); Fla. Stat. ch. 617 (nonprofit organizations). Therefore, jurisdiction does not exist under 28 U.S.C. § 1331.

Alternatively, Plaintiff may invoke the jurisdiction of the Court based upon diversity of citizenship of the parties. See 28 U.S.C. § 1332. Plaintiff, a Florida resident, does not allege in his Complaint or Amended Complaint whether the Defendants named in these claims are citizens of Florida or of another state. The Court notes, however, that the Certificates of Service attached to Plaintiff's filings reflect Florida addresses for these Defendants. Lacking any evidence to the contrary, the Court surmises that the parties are not of diverse citizenship as required by 28 U.S.C. § 1332. Consequently, the Court is unable to exercise jurisdiction over these claims due to lack of subject matter jurisdiction.[13]

### C. Claims of Improper Administration of Plaintiff's Mother's Estate

Plaintiff alleges his entitlement to his late mother's estate as sole legal heir and prays the Court grant him "full custody" of his mother's estate. (Am. Compl. 3, ¶¶ 8, 12.) Plaintiff makes a number of claims regarding alleged errors in the administration of the estate and

---

[13] If Plaintiff had stated a valid claim for relief with his federal claims, the Court would have the discretion to exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367. See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004). That option does not exist in the present case.

acts and omissions of the personal representative,[14] and requests that the Court correct "all errors that have been committed in the transactions of the Estate of Beatrice W. Ziegler." (Id. at 3, ¶ 11.)

As with his conspiracy and fraudulent transfer claims concerning his mother's real property, Plaintiff's claims regarding the administration of his mother's estate are solely matters of state law, and do not raise a federal issue under 28 U.S.C. § 1331.  See generally Fla. Stat. ch. 731 et seq. (Florida Probate Code).  Moreover, Plaintiff has not shown how any of the Defendants against whom these claims are made[15] are of diverse citizenship.  See 28 U.S.C. § 1332.  Therefore, the Court lacks subject matter jurisdiction over Plaintiff's probate-related claims.

### D. Lending Fraud and Foreclosure Claims Regarding Plaintiff's Mother's Property

Plaintiff claims that Defendants First Union Mortgage Corporation and MERS[16] committed "predatory lending" and "affinity fraud" with regard to the mortgage on Plaintiff's mother's home at 1955 Ella Street, Jacksonville, Florida, and that MERS' state court

---

[14] It is not apparent from the pleadings whether Ms. Ziegler's estate has been submitted to probate.

[15] It is unclear from Plaintiff's allegations whether any of the Individual Defendants are the subject of these claims, as Plaintiff does not identify the personal representative by name and Plaintiff's allegations against the Individual Defendants appear to be primarily focused on the alleged transfer of the property to the Church. See supra Part III.B.  Regardless, none of the Individual Defendants appears to be of diverse citizenship.

[16] The mortgage documents attached to Plaintiff's Amended Complaint reflect First Union Mortgage Corporation as lender.  It appears that although First Union initiated the mortgage in 1999, MERS succeeded to First Union's interest, as MERS was the entity which filed the foreclosure action in 2003.  Plaintiff's allegations concerning the mortgage do not specifically mention Defendant First Union Mortgage Corp., but in the spirit of liberal reading of Plaintiff's complaint, the Court shall construe these claims as applying to both Defendants.

foreclosure action in 2003 was illegal.  Plaintiff has attached a copy of the complaint filed in the foreclosure action in the Fourth Judicial Circuit Court in and for Duval County, Florida, which the Court will consider for the purpose of evaluating the Motions to Dismiss.  See Fed. R. Civ. P. 10(c).  Additionally, Defendant MERS has attached to its Motion to Dismiss a copy of the amended complaint in the state court foreclosure action, along with Plaintiff's answer and the state court's final judgment of foreclosure for MERS.  Because these documents are public records, the Court takes judicial notice of the exhibits and will consider them for the purpose of the instant Motions.  See Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (approving district court's consideration of matters outside the pleadings to determine existence of subject matter jurisdiction).

Plaintiff again faces the hurdle of establishing how the Court has jurisdiction over his claims concerning the mortgage on his mother's property, the foreclosure on the mortgage, and any other legal consequences flowing from the foreclosure.  Plaintiff has not alleged a violation of federal law.  Moreover, Plaintiff has not alleged diversity of citizenship.  Even assuming, arguendo, that Plaintiff could establish diversity of citizenship between the parties,[17] see 28 U.S.C. § 1332, Plaintiff is essentially asking the Court to review the judgment of a state court.  The U.S. Supreme Court, in the 1923 case of Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923), and, more recently, in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-83 (1983), has clearly established that such a review is outside the jurisdiction of the lower federal courts.  See 460 U.S. at 482-83; 263 U.S. at

---

[17] Plaintiff's certificate of service reflects out-of-state addresses for both Defendants.  It is unknown whether these addresses reflect (1) the principal place of business of Defendants, (2) the state(s) in which Defendants are incorporated, or neither of the above.  See 28 U.S.C. § 1332(c)(1).

416. As a result of Rooker and Feldman, federal courts recognize the Rooker-Feldman doctrine, which prohibits a district court from hearing "certain matters related to previous state court litigation." Goodman, 259 F.3d at 1332. The doctrine "is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." Id. at 1333.

To determine whether the Rooker-Feldman doctrine bars jurisdiction, a court must consider the following four criteria: whether "(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003) (internal citations omitted). An issue is considered "inextricably intertwined" when a "'federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Goodman, 259 F.3d at 1332 (quoting Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc)). Thus, a federal district court does not have jurisdiction when a plaintiff's claims necessarily result in a re-examination of a state court decision. See Cooper-Jolley v. Lyttle, 3 F. Supp. 2d 1446, 1448 (N.D. Ga. 1998).

Applying the Amos test, the Court notes, with regard to the first criterion, that Plaintiff was a party in the state court foreclosure proceeding. Although MERS' original complaint did not name Plaintiff, he was added as a defendant in the amended complaint and filed an

answer. (MERS's Mot. to Dismiss, Comp. Exh. A at 1, 12-13.)  Secondly, the state court judgment constituted a final judgment on the merits, entering judgment for the plaintiff in that action, MERS.  (Id. at 14-18.)  Regarding the third Amos factor, Plaintiff had a reasonable opportunity to raise the claims he now raises at the time of the state court action.  In fact, Plaintiff, in his answer to MERS's complaint, asserted a defense that the mortgage note was invalid due to notarial deficiencies, among other claims.  (Id. at 12-13.)  Plaintiff had the opportunity at that time to pursue his claims concerning fraud on the part of MERS or any other question about the validity of the mortgage.  Finally, with respect to the fourth Amos criterion, the issues raised in the present action were actually adjudicated in the state court action, and, to any extent they were not adjudicated, they were inextricably intertwined therein.  Specifically, Plaintiff's allegation that MERS' foreclosure was illegal (Am. Compl. 3, ¶¶ 5, 9) was adjudicated by the state court when it granted final judgment to MERS.  Moreover, Plaintiff's claim that the mortgage was obtained through "predatory lending" and "affinity fraud" (id. at 1, ¶ 3), would succeed only to the extent that the state court wrongly decided the mortgage was valid.  In other words, if the mortgage was obtained via fraud, the state court would have erred by declaring the mortgage valid and entering judgment for MERS.  Thus, the issues are inextricably intertwined.  See Goodman, 259 F.3d at 1332.  Similarly, to the extent Plaintiff complains that MERS' other actions were illegal (e.g., holding a sale of the property pursuant to the state court's judgment[18]), such a claim would also rely

---

[18] The record does not reflect whether a sale took place.  The actual disposition of the property has no bearing on the Court's analysis of Plaintiff's claim at this stage in the proceedings.

on an assumption that the foreclosure judgment itself was legally flawed, rendering it inextricably intertwined with the previous decision as well. See id.

In sum, any review of Plaintiff's claims concerning the mortgage and foreclosure would necessarily involve a re-examination of the state court's decision and judgment, see Cooper-Jolley, 3 F. Supp. 2d at 1448, which is prohibited under the Rooker-Feldman doctrine. Accordingly, the Court lacks subject matter jurisdiction over these claims.

### E. Miscellaneous Claims

Plaintiff asserts that Defendant Norwest Financial Florida committed "predatory lending" and "affinity fraud" by making a loan to Plaintiff's mother in 1996. (Am. Compl. 2, ¶ 1.) Plaintiff has not raised a federal question with respect to this claim, nor has he shown diversity of citizenship with this Defendant. The Court, therefore, lacks subject matter jurisdiction over this claim.

Plaintiff also asserts that he is entitled to the property at 1955 Ella Street under the Florida homestead exemption. (Id. at 3, ¶ 7.) See Fla. Const. art. X, § 4. Although raised on an independent legal basis, this claim is "inextricably intertwined" with the action of the state court in entering a final judgment in MERS's foreclosure action, see Amos, 347 F.3d at 1265 n.11; therefore, the Court lacks subject matter jurisdiction over this claim for the same reasons discussed supra in Part III.D.

Plaintiff further alleges that an unidentified party has "alter[ed] and falsely present[ed] records and post[ed] [Plaintiff's] signature ... from one documentation to another."[19] (Compl.

---

[19] This claim appears only in the original Complaint. However, considering that Plaintiff's Amended Complaint is actually entitled "Amended Motion for Clarification," the Court suspects Plaintiff did not intend the second filing entirely to supplant his original claims, and therefore includes the claim
(continued...)

¶ 5.) Plaintiff has not stated this claim with sufficient detail to meet the pleading requirements of Rule 8(a); nevertheless, reading Plaintiff's Complaint liberally, the allegation appears to be one of forgery. Plaintiff has not shown how this allegation raises a federal question or is based on diversity of citizenship. Consequently, the Court lacks jurisdiction over this claim.

Finally, Plaintiff seeks leave to add a claim for punitive damages. (Second Resp. 1.) Plaintiff included a prayer for relief in the form of punitive damages in his original pleading (Compl. 2) and also referred to punitive damages in his amended pleading (Am. Compl. 1 ¶ 1, 4 ¶ 4). The Court finds these references sufficient to plead punitive damages in light of Plaintiff's pro se status. See Tannenbaum, 148 F.3d at 1263. Therefore, no amendment is necessary because Plaintiff has already demanded judgment in the form of punitive damages. See Rule 8(a)(3).

## IV. Conclusion

In light of the foregoing, the undersigned recommends that the Motions to Dismiss be granted.[20]

After due consideration, it is

**RECOMMENDED**:

1. Defendants McKinley Young, William H. Lamar, IV, Ronald Williams, and Mary N. Ravnell's Motion to Dismiss (Doc. 6) be **GRANTED**.

---

[19](...continued)
in its discussion. See Tannenbaum, 148 F.3d at 1263.

[20] In the event that the Report and Recommendation is not adopted, the Individual Defendants' defense of insufficiency of service of process, as well as MERS' affirmative defenses and Motion [in the Alternative] for a More Definite Statement, will be addressed promptly.

2. Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (Doc. 7) be **GRANTED as to the Motion to Dismiss**.

3. Plaintiff's request for leave to amend the Amended Complaint to add a claim for punitive damages be **DENIED as moot**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on December 20, 2007.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jcd

Copies to:

The Honorable Timothy J. Corrigan

Counsel of Record
Pro Se Parties